**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Newport News Division


CARLTON HOFLER,

        Plaintiff,

v.                                                     ACTION NO. 4:11cv172

MICHAEL J. ASTRUE,
Commission of Social Security

        Defendant.


## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brought this action under 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") that denied his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act.

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by order of reference, dated March 19, 2012. This Court recommends that the decision of the Commissioner be VACATED and the case be REMANDED for further administrative proceedings.

## I. PROCEDURAL BACKGROUND

Plaintiff, Carlton Hofler, filed an application for DIB on September 23, 2008, alleging he

had been disabled since December 1, 2000 (R. 110-17),[1] due to heart problems, knee problems, diabetes, asthma, sleep apnea, high blood pressure, mental disorder, bad back, gout, arthritis, panic attacks, migraines, irritable bowel syndrome, degenerative disc disease, eczema, and myositis. R. 152   His claim was denied initially and on reconsideration. R. 52-53.

At Mr. Hoffler's request, a hearing before an Administrative Law Judge ("ALJ") took place on July 29, 2010. R. 26-51.  On August 10, 2010, the ALJ found Mr. Hoffler was not disabled. R. 10-25. The Appeals Council denied Mr. Hoffler's request to review the ALJ's decision on November 2, 2011, making the ALJ's decision the Commissioner's final decision. R. 1-3.

Having exhausted all administrative remedies, Mr. Hoffler filed a complaint with this Court on December 27, 2011, in accordance with 42 U.S.C. § 405(g). ECF No. 1. Defendant Commissioner filed an Answer to the Complaint on March 15, 2012. ECF No. 4.  The case is now before the Court on the parties' cross motions for summary judgment. ECF Nos. 8 and 10. As neither counsel in this case has indicated special circumstances requiring oral argument in this matter, the case is deemed submitted for a decision based on the memoranda.

## II. <u>FACTUAL BACKGROUND</u>

Carlton Hofler is a 66 year-old man with a high school education, three years' of college credit, and additional training as an aircraft mechanic. R. 32, 34, 35, 47, 110-12. His past employment included work as an aircraft mechanic and a quality control supervisor. R. 47.  Mr. Hoffler last worked in 1996. R. 162.  In order to establish eligibility for DIB, Mr. Hoffler must show that he became disabled on or before September 30, 2001, his date last insured. R. 15.

---

[1] Page citations are to the administrative record previously filed by the Commissioner.

**A. Medical Evidence in the Record**[2]

After moving from Idaho, Mr. Hoffler went to the Veterans' Administration (VA) Medical Center in Hampton for a primary care visit on March 16, 2001. R. 1320-22. He reported that he had hypertension since 1968, low back pain since 1968, knee pain since the 1970's, migraine headaches since 1980, with his most recent attack in November 2000, "depression on Prozac since 1985-86," sleep apnea since 1990 for which he was prescribed a Continuous Positive Airway Pressure (CPAP) machine, obesity for the last ten years, dermatitis, and questionable diabetes mellitus. R. 1320. Mr. Hoffler reported sharp constant pain in his lower back, which he rated as 8 on a scale of 1 to 10. R. 1325. On examination, he was alert and oriented with "real obese noisy respirations," and his blood pressure was 139/95. R. 1321. Mr. Hoffler's motor strength was 5/5 bilaterally. R. 1322. Sensation was intact to light touch bilaterally. R. 1322. Tam Do, M.D., diagnosed hypertension not well controlled, adult onset diabetes mellitus, morbid obesity (6'3" and 399 lbs.), sleep apnea, asthma on inhaler, questionable major depression, flat feet, callouses, migraine, gout, irritable bowel syndrome, knee pain, and dermatitis. R. 1322.

Mr. Hoffler attended a weight management group on May 25, 2001, under the direction of a clinical dietitian. R. 1318.

On June 19, 2001, Mr. Hoffler returned to the VA Medical Center reporting pain in his lower back and knees, which he rated as a 7 on a scale of 1 to 10. R. 1317. He requested medicine for his rashes and hemorrhoid, as well as nitroglycerin patches. R. 1314. Mr. Hoffler reported he was trying to take care of his wife after a car accident on June 14. R. 1314. Mr. Hoffler was alert, oriented, ambulatory, and morbidly obese (402.7 pounds). R. 1314, 1316. His

---

[2] While the Administrative Record is voluminous, consisting of 1341 pages, only a small number of the medical records pertain to the relevant period from December 1, 2000, the alleged onset date, through September 30, 2001, the date last insured.

lungs were clear. R. 1314. Dr. Do assessed adult onset diabetes mellitus, obesity, and dermatitis. R. 1314. Due to Mr. Hoffler's responses to questions regarding his mental health, a mental health consult was scheduled. R. 1315-16.

Mr. Hoffler was seen by a primary care nurse twice in July 2001 for blood pressure monitoring. R. 1312.

On August 29, 2001, Mr. Hoffler underwent a mental health intake assessment at the VA mental health clinic. R. 1309-11. Mary Sweeney, a Clinical Nurse Specialist (CNS), under the direction of Walter Mostek, M.D., a staff psychiatrist, evaluated Mr. Hoffler. R. 1309-11. Mr. Hoffler reported that he was treated with Prozac for depression while in the military. R. 1309. He stated that he was never hospitalized for psychiatric problems, but was treated as an outpatient. R. 1309. He stated that he had been on Buproprion for a few years, which helped him to deal with his depression. R. 1309. He denied psychotic symptoms or suicidal or homicidal ideation. R. 1309. He stated he had recently relocated to the area from Boise, Idaho, where he was seeing a psychiatrist about every two months. R. 1309. Mr. Hoffler reported he had a lot of financial worries, and that his wife had medical problems, which had caused him to go into bankruptcy a few times. R. 1309. He also reported that he needed to have both knees replaced, but needed to lose some weight first. R. 1309. He listed his medications as aspirin, Buproprion, Terazosin, Nitroglycerin patch, Fosinopril, Lansoprazole, Oxybutynin, Celecoxib, Cyclobenzaprine, Allopurinol, and inhalers. R. 1310.

Mr. Hoffler's speech was coherent and rational with normal rate and tone. R. 1310. He had no psychomotor abnormalities. R. 1310. He was pleasant and cooperative. R. 1310. His mood was dysthymic with a full range of affect. R. 1310. His thoughts were well organized and goal-directed. R. 1311. He had no delusions or hallucinations. R. 1311. His insight and judgment

4

were not impaired, and his memory was grossly intact. R. 1311. CNS Sweeney diagnosed dysthymia, with a Global Assessment of Functioning score of 50.[3] R. 1311. She refilled Mr. Hoffler's medication and recommended supportive psychotherapy. R. 1311.

On September 13, 2001, Mr. Hoffler had no acute problems, though he had gained 23 pounds since June 2001, and had suffered a gout attack the previous month. R. 1306. His blood pressure was 139/89. R. 1306. His lungs were clear. R. 1306. He had no tenderness of the abdomen and no gout in his extremities. R. 1306. Dr. Do noted that Mr. Hoffler's hypertension was better controlled and his adult onset diabetes mellitus was under fair control. R. 1306.

By letter dated December 13, 2002, Mr. Hoffler received a 100% service-connected disability rating from the VA based on a claim received August 2001. R. 174-188. Mr. Hoffler's Global Assessment of Functioning (GAF) score was 60.[4] R. 182.

**B. Administrative Hearing Testimony – July 29, 2010**

Mr. Hoffler testified at his administrative hearing, held July 29, 2010, that he completed three years of college. R. 34. He served in the Air Force from 1966 through 1986. R. 34. He testified that he worked as an aircraft mechanic supervisor, where he supervised over sixty people. R. 35. After he retired from the Air Force, he worked as a quality control supervisor for a non-profit school fund-raising company. R. 36. He receives a pension from the Air Force, VA compensation, and early Social Security retirement benefits. R. 34, 36.

Mr. Hoffler testified that he is the legal guardian of his autistic niece and nephew, who are both nine years old. R. 32. His nephew is non-verbal and non-potty trained. R. 32. Mr.

---

[3] A GAF score of 41-50 indicates serious symptoms or serious difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Text Revision 2000) ("DSM-IV-TR").

[4] A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. DSM-IV-TR at 34.

Hoffler is the sole care giver for the children. R. 32-33. He and his wife separated, because she had her own medical issues, and could not deal with their nephew's problems. R. 33. Mr. Hoffler testified that he weighed 373 pounds. R. 32. He testified that he drives as little as possible, and that he cares for his 45 pound Siberian Husky. R. 32-33.

Mr. Hoffler testified that in December 2000 he could hardly lift anything, and that his knees and back would give out. R. 41. There were days he had to just lay down and do nothing, even on pain medications. R. 41. He was getting depressed, because he could not do anything. R. 42. He stated he could stand 45 minutes to an hour before needing to sit down for an hour to two hours. R. 42. He could only lift his left arm to shoulder height due to pain. R. 45.

The ALJ also elicited vocational expert (VE) testimony. R. 47-49. The VE noted that Mr. Hoffler worked at a medium to heavy skilled position as an aircraft mechanic supervisor, and also in a medium semi-skilled position as a quality control supervisor. R. 47-48.

The ALJ asked the VE whether jobs exist in the national economy for a hypothetical individual who was 54-years old on the date of the alleged onset, with the same education and work experience as Mr. Hoffler, who could perform light work, with the option of sitting and standing at will, and who could only interact occasionally with the public. R. 48-49. The VE testified that there would be no transferability of his previously obtained skills. R. 49. The VE further testified that the hypothetical individual would have been able to perform the alternative positions of an unarmed security guard; and, as an assembler of small parts. R. 49.

## C. ALJ's Decision – August 10, 2010

To ascertain whether Mr. Hofler was disabled on his date last insured, the ALJ followed the five-step sequential analysis set forth in 20 C.F.R. § 404.1520. R. 13-25. The ALJ found Mr. Hoffler met the insured status requirements of the Act through September 30, 2001, the date last

insured, and had not engaged in substantial gainful activity from December 1, 2000, the alleged onset date of disability, through September 30, 2001. R. 15. Second, Mr. Hoffler suffered from the following severe impairments: arthritis, dysthymia, knee pain, lumbar degenerative disc disease, gout, morbid obesity, sleep apnea, depression and anxiety. R. 16. Third, through the date last insured, Mr. Hoffler did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 17.

After step three, but prior to deciding whether Mr. Hoffler could perform his past relevant work at step four, the ALJ determined Mr. Hoffler's residual functional capacity ("RFC") through the date last insured. The ALJ found that Mr. Hoffler had the RFC to perform a range of light work with additional limitations: the option of alternating between sitting and standing as needed; and, only occasional interaction with the public. R. 20.

At the fourth step, the ALJ found Mr. Hoffler was unable to perform any past relevant work. R. 24. At step five of the sequential analysis, the ALJ found that, considering Mr. Hoffler's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Mr. Hoffler could have performed. R. 24.

In his memorandum in support of summary judgment, Mr. Hoffler alleges the following errors: (1) the ALJ failed to consider that Mr. Hoffler presented a borderline age situation; and, (2) the ALJ erroneously assessed Mr. Hoffler's RFC. Pl.'s Mem. in Support of Mot. for Sum. J. 3-13.

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the

record, and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2012); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

When reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589; *Hays*, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Craig*, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was reached by means of an improper standard or misapplication of the law. *Perales*, 402 U.S. at 390; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980)).

Thus, reversing the denial of benefits is appropriate only if either (A) the ALJ's determination is not supported by substantial evidence on the record, or (B) the ALJ made an error of law. *Coffman,* 829 F.2d at 517.

## IV. <u>ANALYSIS</u>

The Social Security Regulations define "disability" as the inability to do any substantial gainful activity, by reason of any medically determinable physical or mental impairment, which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505(a) (2012); *see also* 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A) (2012). To meet this definition, the claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, considering whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals a condition contained within the Social Security Administration's official listing of impairments, (4) has an impairment that prevents him from past relevant work, and (5) has an impairment that prevents him from any substantial gainful employment. 20 C.F.R. § 404.1520. An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability, while affirmative answers to questions three or five establish disability. *Id.* The burden of production and proof is on the claimant for the first four steps of the analysis, but shifts to the Commissioner at step five to produce evidence the national economy contains other jobs the claimant can perform considering his age, education, and work experience. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993); 20 C.F.R. § 404.1520(a)(4)(v).

Mr. Hoffler attacks the ALJ's fifth finding, alleging that the ALJ erred by not considering that Mr. Hoffler presented a borderline age situation even though Mr. Hoffler was only eight days shy of his 55th birthday on his date last insured for DIB. Pl.'s Mem. in Supp. of Mot. Summ. J. 3-5. For this reason, Mr. Hoffler asks that the case be reversed for payment of benefits, or be remanded for consideration of whether the older age category (applicable to claimants 55-59 years old) should be applied. *Id.* at 5. Defendant argues that the decision should be affirmed,

because the ALJ adequately considered Mr. Hoffler's borderline age, and found no "vocational adversities" that would cause him to use the older age category in applying the Grids. Def.'s Mem. in Supp. of Mot. Summ. J. 10-12. This Court recommends that the Commissioner's decision is not supported by substantial evidence due to the ALJ's failure to explicitly address Mr. Hoffler's borderline age situation or explain why the ALJ used the chronological age of 54 instead of placing Mr. Hoffler in the 55-59 age category when Mr. Hoffler was eight days shy of 55 on his date last insured.

The ALJ found that Mr. Hoffler met his burden of proving that, as of his date last insured, he was not engaged in substantial gainful activity, and he had a severe impairment that prevented him from past relevant work, though the impairment did not equal a condition contained within the Social Security Administration's official listing of impairments. R. 15-24. At step five, the burden was on the ALJ to produce evidence the national economy contained other jobs the claimant could perform considering his age, education, and work experience. *Hunter v. Sullivan*, 993 F.2d at 35; 20 C.F.R. § 404.1520(a)(4)(v). One way in which the ALJ could meet his burden at step five of the sequential analysis is by relying upon the Medical-Vocational Guidelines ("the Grids"). 20 C.F.R. Pt. 404, Subpt. P, App. 2. The Grids take into consideration a plaintiff's physical abilities, age, education, and work experience, and direct a finding of disability or lack of disability, depending on a combination of these factors. *Id.*[5] Specifically, 20 C.F.R. § 404.1563 breaks age into four categories: (1) closely approaching retirement age (60-64); (2) advanced age (55-59); (3) closely approaching advanced age (50-54); and (4) younger individual

---

[5] When a claimant suffers only exertional impairments, the Grids are dispositive of whether the claimant is disabled. *Gory v. Schweiker,* 712 F.2d 929, 930 (4th Cir. 1983). However, if a claimant suffers from non-exertional impairments or a combination of exertional and non-exertional impairments, the Commissioner must prove through vocational expert testimony that jobs exist in the national economy which the claimant can perform. *See Walker v. Bowen,* 889 F.2d 47, 49-50 (4th Cir.1989); 20 C.F.R. § 404.1569a. A nonexertional impairment is a "limitation that is present whether a claimant is attempting to perform the physical requirements of the job or not." *Gory v. Schweiker,* 712 F.2d at 930.

(18-49). Social Security Regulations require that where someone is on the border of a higher age category, these categories are not to be mechanically applied. 20 C.F.R. § 404.1563(b); *Gory v. Schweiker*, 712 F.2d 929, 930-31 (4th Cir. 1983). That is, if an individual is "within a few days of reaching an older age category, and using the older category would result in a determination that [the individual] is disabled, [the Commissioner] will consider whether to use the older category after evaluating the overall impact of all the factors of [an individual's] case." 20 C.F.R. § 404.1563(b).

The Social Security Administration, through the Hearings, Appeals, and Litigation Law Manual (HALLEX), offers the following guidance for determining whether a borderline age situation exists:

> To identify borderline age situations when making disability determinations, adjudicators will apply a two-part test:
>
> (1) determine whether the claimant's age is within a few days or a few months of a higher age category.
>
> (2) If so, determine whether using the higher age category would result in a finding of "disabled" instead of "not disabled."
>
> If the answer to both questions is "yes," a borderline age situation exists and the adjudicator must decide whether it is more appropriate to use the higher age or the claimant's chronological age. (Use of the higher age category is not automatic.) To decide which age category to use, take a "sliding scale" approach. Under this approach, the claimant must show progressively more additional vocational adversity(ies) — to support use of the higher age — as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens.

HALLEX II-5-3-2 (S.S.A.), 2003 WL 25498826 (2003).

A borderline age situation exists in this case, where application of the advanced age category (ages 55-59) to Mr. Hofler, who was just eight days short of 55 on his date last insured,

11

would have resulted in a finding of disabled. Grid Rule 202.06 states that a 55-59 year old individual is disabled if the individual (1) can no longer perform vocationally relevant past work; (2) has a high school education or more, but whose skills do not provide for direct entry into skilled work; (3) is skilled or semi-skilled, but the skills are not transferrable; and, (4) has a maximum sustained work capability limited to light work. 20 CFR Pt. 404, Subpt. P, App. 2. The ALJ found Mr. Hoffler was unable to perform any past relevant work through the date last insured, and could perform a limited range of light work. R. 24. Further, the Vocational Expert found Mr. Hoffler's skills were not transferable. R. 49. Consequently, had the ALJ considered Mr. Hoffler's age as "advanced" (55-59), as opposed to "closely approaching advanced" (50-54), the Grids would have dictated a finding of disabled. Grid Rule 202.06, 20 CFR Pt. 404, Subpt. P, App. 2.

In his opinion, the ALJ noted Mr. Hofler's date of birth, and that he was 54 years old, defined as an individual closely approaching advanced age, on his date last insured. R. 24. The ALJ then found that "transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." R. 24. Lastly, the ALJ found that based on the record, including the testimony of the vocational expert, "through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." R. 25. The ALJ failed to include any borderline age analysis in the opinion.

Defendant asserts the ALJ relied on vocational expert testimony "as the Medical-

Vocational Guidelines are inapplicable to this case." *Id.* at 10. Presumably, Defendant is arguing

that because Mr. Hofler suffers from both exertional and non-exertional impairments, the Grids

cannot be applied. However, where the Grids indicate an individual's exertional limitations lead

to a finding of disabled, the presence of non-exertional limitations does not alter this finding. *See*

*Woody v. Barnhart*, 2006 WL 2349939, at *3-4 (W.D. Va. Aug. 14, 2006).

Defendant further contends the ALJ complied with the Social Security Administration's

regulations and internal agency documents when he applied the 50-54 age category to Mr.

Hofler, due to the fact that Mr. Hofler does not have any vocational adversities that would

require use of the older age category. Def. Mem. in Support of Mot. for Sum. J. 11-12. Whether

the ALJ actually conducted such an analysis is unclear, however, as the ALJ does not reference

the borderline age issue in his opinion. While the regulations clearly require the ALJ to consider

the borderline age issue, guidance is less clear on whether the ALJ is required to explicitly

reference this issue and explain the analysis in his opinion.

The regulations are silent on this issue, and the internal agency documents seem to be in

conflict. HALLEX states, "[a]bsent a showing of additional adversity(ies) justifying use of the

higher age category, the adjudicator will use the claimant's chronological age — even when the

time period is only a few days. *The adjudicator need not explain his or her use of the claimant's*

*chronological age.*" HALLEX II-5-3-2 (emphasis added). However, the Defendant also relies

on the Social Security Administration's Program Operations Manual System ("POMS"), an

internal agency document used by employees to process claims. The current version of POMS

states, "[w]hen a borderline age situation exists, you must explain your decision to use the next

higher age category or your decision to use the claimant's chronological age and explain the

specific factors supporting your determination." SSA's Program Operations Manual System, DI

25015.005 Age as a Vocational Factor, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015005 (last visited Jan. 9, 2013).[6]   Therefore, to the extent the internal agency documents may have been "entitled to respect" in their interpretation of an ambiguous regulation, these offer little aid. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (holding an agency ruling or interpretation, while not controlling, can be entitled to respect depending upon thoroughness, consistency, and "all those factors which give it power to persuade, if lacking power to control").

More importantly, circuit courts are split on whether the ALJ must explicitly discuss consideration of the borderline age issue.  The Third, Eighth, and Tenth Circuits have found insufficient evidence exists to support the ALJ's opinion where the ALJ failed to make express findings regarding the age category determination in borderline age cases. *See Phillips v. Astrue*, 671 F.3d 699, 707 (8th Cir. 2012); *Lucas v. Barnhart*, 184 Fed. Appx. 204, 208 (3d Cir. 2006); *Daniels v. Apfel*, 154 F.3d 1129, 1136 (10th Cir. 1998).  However, the Sixth, Ninth and Eleventh Circuits interpret the regulations as not imposing a requirement that ALJ's explicitly address the borderline age issue in the opinion. *See Caudill v. Comm'r of Social Security*, 424 Fed. Appx. 510, 517 (6th Cir. 2011) (citing *Bowie v. Comm'r of Social Security*, 539 F.3d 395, 399 (6th Cir. 2008)); *Lockwood v. Comm'r Social Security Admin.*, 616 F.3d 1068, 1071-72 (9th Cir. 2010); *Miller v. Comm'r of Social Security*, 241 Fed. Apps. 631, 635 (11th Cir. 2007).

The Fourth Circuit has not addressed this issue.  However, several district courts within the Fourth Circuit have required that ALJ to provide some analysis and make express findings in borderline age situations.  *See Pickett v. Astrue*, __ F.Supp.2d __, 2012 WL 3912754, at *4 (E.D.

---

[6] The current version of this section of POMS became effective on April 22, 2011. SSA's Program Operations Manual System, DI 25015.005 Age as a Vocational Factor, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015005 (last visited Jan. 9, 2013).  The Court has been unable to access the version of the applicable POMS section in existence on August 10, 2010, the date the ALJ issued the decision in Mr. Hofler's case.  However, according to a discussion of this section in a Ninth Circuit opinion, the POMS manual at one time did not require the ALJ to make an express finding with regards to the borderline age issue (June 20, 2002 through May 24, 2006), but later did require the ALJ to explain the age category decision, citing specific supporting factors (May 24, 2006 through July 20, 2006). *See Lockwood v. Comm'r Social Sec. Admin.*, 616 F.3d 1068, 1072-73 (10th Cir. 2010).

Va. Sept. 7, 2012) (remanding because "[t]he greater weight of authority leads to the conclusion that the ALJ's failure to explicitly address the borderline age issue provides insufficient basis for review" where plaintiff was less than four months away from the higher age category); *Brown v. Astrue*, 2009 WL 890116, No. 3:07-2914-SB, at *12 (D.S.C. Mar. 30, 2009) (remanding where the ALJ failed to offer any analysis for applying the Plaintiff's chronological age when Plaintiff was four months shy of the higher age category); *Bush v. Astrue*, 129 Soc.Sec.Rep.Serv. 196, 2008 WL 867941, at *7-8 (S.D. W.Va. Mar. 28, 2008) (finding the Commissioner's decision was not supported by substantial evidence where the ALJ failed to explain his choice of age category when claimant was 116 days from a higher age category); *Woody v. Barnhart*, 2006 WL 2349939, at *3-4 (W.D. Va. Aug. 14, 2006) (remanding where the ALJ failed to provide any substantive analysis regarding use of the grids where claimant was 57 days short of a higher age category); *Ford v. Heckler*, 572 F. Supp. 992 (E.D. N.C. 1983) (remanding a case for a non-mechanical analysis because the ALJ failed to consider that a plaintiff was three months away from the next age category); *France v. Apfel*, 87 F.Supp. 2d 484 (D. Md. 2000) (granting plaintiff's motion for summary judgment where the ALJ failed to sufficiently address the borderline age situation and strictly applied an age category to plaintiff, who was five months shy of a higher age category). *See also Mitchell v. Astrue*, 2011 WL 5037134, at *4 (W.D. N.C. Oct. 24, 2011) (finding it unnecessary to address whether the ALJ must explicitly discuss consideration of the borderline age issue where remand is necessary due to ALJ's reliance on claimant's age on the alleged disability onset date as opposed to the date of his decision).

The Court finds unpersuasive Defendant's argument that Mr. Hoffler's lack of vocational adversities, as well as the ALJ's consultation of a vocational expert, shows the ALJ properly applied the Grids as guided by the Social Security Rulings, HALLEX, and POMS. *See* Def.

Mem. in Support of Mot. for Sum. J. 10-12.  The burden of proof is on the Commissioner at step

five to produce evidence the national economy contains other jobs the claimant can perform

considering his age, education, and work experience. *Hunter v. Sullivan*, 993 F.2d at 35; 20

C.F.R. § 404.1520(a)(4)(v). *See Bush*, 2008 WL 867941, at * 7 (citing *Daniels*, 154 F.3d at

1133) (holding that because the decision regarding age category is a step five decision, the

Commissioner has the burden of explaining why a certain age category was applied).  The

regulations clearly required the ALJ to consider Mr. Hofler's borderline age situation.  20 C.F.R.

§ 404.1563(b); *Gory v. Schweiker*, 712 F.2d at 930-31.

The ALJ did not reference the fact that Mr. Hofler was only eight days away from the

"advanced" age category on his date last insured, when placing Mr. Hofler in that age category

would have resulted in a finding of disabled under the Grids. R. 24.  This Court cannot determine

why the ALJ decided to apply Mr. Hofler's age as opposed to applying the higher age category,

because any analysis of Mr. Hofler's borderline age issue is absent from the record.  This Court

agrees with the weight of authority holding that, in order for an opinion to be supported by

substantial evidence, the ALJ must explain the analysis applied in a borderline age situation.

Consequently, the decision of the ALJ and Commissioner is not supported by substantial

evidence, and this Court recommends that the final decision of the Commissioner be

REVERSED and REMANDED so that the ALJ may appropriately address Mr. Hofler's

borderline age on his date last insured for DIB.

## V. <u>RECOMMENDATION</u>

Based on the foregoing analysis, it is the recommendation of this Court that Mr. Hoffler's

Motion for Summary Judgment (ECF No. 8) be GRANTED to the extent that it seeks remand of

the Commissioner's decision and DENIED to the extent that it seeks reversal and an entry of an

order directing the award of benefits. The Court further recommends that Defendant's Motion for Summary Judgment (ECF No. 10) be DENIED, and that the final decision of the Commissioner be VACATED and REMANDED for further administrative proceedings consistent with this Report and Recommendation.

## VI. <u>REVIEW PROCEDURE</u>

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir.).

_____/s/_____
Tommy E. Miller
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
January 9, 2013

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Scott Bertram Elkind, Esq.
Elkind & Shea
801 Roeder Rd.
Suite 550
Silver Spring, MD  20910

Joel E. Wilson, Esq.
United States Attorney's Office
101 W. Main St., Suite 8000
Norfolk, VA 23510


By _____
          Fernando Galindo, Clerk
              Deputy Clerk
           January _____, 2013